In re Estate of Deal: Deal, Appellant, *v.* The Campbell National Bank, Appellee.

(No. 950—Decided May 23, 1942.)

*Messrs. Mouser & Mouser,* for appellant.
*Messrs. Guthery & Guthery,* for appellee.

GUERNSEY, J. This is an appeal from a judgment of the Probate Court of Marion county, Ohio, sustaining exceptions filed by the appellee, The Campbell National Bank, to the final account of Jalma H. Deal as administrator of the estate of Harrison Deal, deceased.

Harrison Deal died July 5, 1933, seized in fee simple of 70 acres of farm land and a life estate in 1/3 of 80 acres of land of which his wife theretofore died seized. This land was encumbered by mortgage executed to The Campbell National Bank of LaRue, Ohio, in the sum of $4,701.78, securing the following notes:

One note was for $2,901.78, due on demand, dated June 5, 1930, signed by Harrison Deal and J. H. Deal; another was for $800, due on demand, dated March 27, 1929, signed by Harrison Deal, and on which said note interest had been paid to March 27, 1930; and the other was for $1,000, due on demand, dated February 19, 1926, signed by Harrison Deal and Sarah Deal, on which interest was paid to December 30, 1929.

The mortgage securing the notes was executed on June 5, 1930, and filed for record with the recorder of Marion county, Ohio, June 6, 1930, and was recorded in volume 140, page 471, of the mortgage records of Marion county, Ohio.

Jalma H. Deal, who is the same person as J. H. Deal, applied on the 2nd day of December 1933 for appointment as administrator of the estate of Harrison Deal, deceased, in which application he stated he was indebted to the estate in the sum of $2,900. He was appointed administrator of the estate December 27, 1933, and letters of administration were issued to him, and to secure the faithful performance of his administration gave a bond executed by The Royal Indemnity Company in the sum of $7,000, which bond was approved by the court. Thereupon Jalma H. Deal proceeded to administer the estate.

The Campbell National Bank, creditor of the estate, duly filed with the administrator its claims on all the notes on the 27th day of February 1934 and within the time allowed by law, and on the same day they were duly allowed as valid claims against the estate by the administrator, Jalma H. Deal.

The Royal Indemnity Company made application to be released from the bond, and this was granted and a new bond in the sum of $7,000 was filed, executed by The National Surety Corporation as surety, which was duly approved by the court.

Jalma H. Deal, the administrator, filed his first and final account as such administrator on the 5th day of February 1937. In this account he charged himself with $877.79 and credited himself with $875.78, leaving a balance in his hands of $2.01 which he distributed pro rata to the next of kin. Jalma H. Deal did not charge himself with any indebtedness on account of the note of $2,901.78 signed by him and Harrison Deal and did not distribute any portion of it to the payment of indebtedness of Harrison Deal owing to the bank, or distribute any portion of it to the next of kin.

The money that made up the $2,901.78, the principal sum of the note, was received by Jalma H. Deal from The Campbell National Bank and no part of it went to Harrison Deal. Harrison Deal was surety on this note for Jalma H. Deal, as well as surety on the notes that went to make up the note of $2,901.78.

The administrator, in the performance of his duties, filed suit in Probate Court to sell the 70 acres of land covered by the mortgage to pay the debts of the estate. In the action the premises were sold at private sale to The Campbell National Bank of LaRue for the sum of $4,000, which sale was confirmed and the proceeds ordered distributed, the amount found due The Campbell National Bank being $5,601.72. The dis-

tribution of the proceeds under the order of the court was as follows:

| | |
|---|---:|
| Taxes, | $ 160.35 |
| Fees to Attorneys, Mouser, Wiant and Mouser for their services, | 150.00 |
| Jalma H. Deal, the administrator, | 50.00 |
| Other costs paid, | 32.10 |
| Total of the aforesaid items, | $ 392.45 |

leaving a balance for distribution to the mortgagee of $3,607.55, which was distributed as follows:

| | |
|---|---:|
| On the $2,901.78 note, interest to March 4, 1936, | 643.08 |
| On principal, | 1608.05 |
| A total of | $2251.13 |
| On the $1000.00 note, interest to March 4, 1936, | 187.69 |
| On principal, | 577.19 |
| A total of | $ 764.88 |
| On the $800.00 note, interest to March 4, 1936, | $ 118.54 |
| On principal, | 473.00 |
| A total of | $ 591.54 |

This made a total of $949.31 credited on interest, and a total of $2,658.24 credited on principal, making a grand total of $3,607.55 credited. This left a balance owing on the $2,901.78 note, of $1,244.36 which was reduced by a payment of $42.66 otherwise made, to $1,201.70, and left a balance owing on the $800 note, of $327, and a balance owing on the $1,000 note, of $422.81, making a grand total of $1,951.51 left owing on the three notes secured by the mortgage. All the notes bear interest at the rate of eight per cent per annum.

The Campbell National Bank has received no payments other than as above set forth.

In the above tabulation it will be noted that from the proceeds of the real estate of which Harrison Deal died seized, there was applied to the payment of the $2,901.78 note, on which Jalma H. Deal was principal and Harrison Deal surety, $643.08 interest, and $1,608.05 on principal, making a total of $2,251.13 paid by the estate on account of the note on March 4, 1936.

In addition to the indebtedness hereinbefore mentioned, Harrison Deal was indebted to The Campbell National Bank on a note executed by him as surety and Jalma H. Deal as principal to the bank in the sum of $308.00 with interest at eight per cent from November 15, 1933, which was unsecured and which was allowed as a valid claim against the estate, upon which indebtedness nothing has been paid.

Jalma H. Deal, at the time of and preceding his appointment as administrator of the estate of Harrison Deal, was solvent but afterwards became and now is insolvent. No demand was made on Jalma H. Deal before or after the death of Harrison Deal up to the presentment of the claims of The Campbell National Bank to the administrator for allowance.

The Campbell National Bank filed exceptions to the final account of Jalma H. Deal, upon the ground that the administrator had failed to account for estate funds used to pay the debts of the administrator, Jalma H. Deal, and asked that his account be disallowed and that he be charged with and account for the sum of $2,901.78, with interest thereon at the rate of eight per cent per annum from the 21st day of August 1933, as cash and assets in his hands and undistributed.

These exceptions were sustained by the court in every respect except as to the rate of interest to be charged on the sum of $2,901.78 which the court found

to be at the rate of six per cent instead of at the rate of eight per cent as set forth in the exceptions.

It is from the judgment of the court sustaining these exceptions that this appeal on questions of law is taken.

The appellant administrator assigns error in the following particulars:

1. That the judgment appealed from is contrary to law in that under the law said administrator was not chargeable with any of the amounts charged against him in said judgment.

2. Error in the admission in evidence of a paper writing purporting to be the journal entry confirming the sale and ordering distribution of the proceeds of the sale of the real estate mortgaged to The Campbell National Bank as hereinbefore set forth.

We will consider the claimed errors in the order mentioned.

The first assignment of error presents the question as to whether an administrator in his official capacity, by reason of his relationship as principal to that of his decedent as surety to certain indebtedness existing at the time of the administrator's appointment and qualification and at a time when the principal was solvent, and no demand for the payment of such indebtedness had previously been made, is liable to have the whole or any portion of the indebtedness regarded and treated as cash in his hands to be accounted for accordingly, where a portion of such indebtedness was listed by the administrator, in his application for appointment, as a debt owing by him to his decedent, and where a portion thereof has been paid by the administrator out of the proceeds of the surety's real estate mortgaged to secure the payment of part of such indebtedness.

The listing, by the administrator in his application for appointment, of indebtedness of the administrator,

for which his decedent was surety, as a debt owing by him to his decedent would not in any respect change the legal character of any obligation he had to the estate by reason of the existence of such indebtedness; so we must consider and determine whether the obligation of the administrator to the estate by reason of the existence of such indebtedness constituted a debt owing by the administrator to the estate, and if a debt, how the amount thereof is determined, and the nature and extent of the liability of the administrator to the estate by reason thereof.

Section 10509-67, General Code (114 Ohio Laws, 416), as in effect at the time of the appointment and qualification of the administrator in the instant case, provided:

"The naming of a person executor, in a will, shall not operate as a discharge or bequest of a just claim which the testator had against such executor. It shall be included among the credits and effects of the deceased in the inventory. The executor shall be liable for it as for so much money in his hands at the time such debt or demand becomes due, and must apply and distribute it in the payment of debts and legacies, and among the next of kin, as part of the personal estate of the deceased."

The provisions of the above section as quoted are to all intents and purposes the same as in the original statute and all predecessor statutes relating to the subject-matter.

It will be noted that by its terms the provisions of this section are applicable only to the liability of a person named as executor, for claims owing by him to his testator, and are therefore inapplicable to the liability of an administrator for claims owing by him to his decedent.

There is no statutory provision relating to the liability of an administrator for claims owing by him to his decedent.

Prior to the enactment of any statute as to the liability of an executor for debts owing by him to his testator, it was definitely settled by decisions of the Supreme Court of Ohio that debts owing by an executor to the testator were to be regarded and treated as cash assets in his hands. *Hall* v. *Pratt,* 5 Ohio, 72; *Admx. of Tracy* v. *Admr. of Card,* 2 Ohio St., 431. It was likewise, also, definitely settled that the above rule was applicable irrespective of whether an executor was solvent or insolvent at the time of his appointment. *Admx. of Tracy* v. *Admr. of Card, supra.* And it was likewise definitely settled that the same rule which is applicable to an executor is applicable to an administrator. *Exr. of Bigelow* v. *Admr. of Bigelow,* 4 Ohio, 138, 19 Am. Dec., 591; *James* v. *West, Admr.,* 67 Ohio St., 28, 65 N. E., 156, following *Exr. of Bigelow* v. *Admr. of Bigelow, supra.*

In view of this settled law on the subject, the original statute, of which the above quoted section is the successor, amounted to no more than a statement of the rule of law applicable to the liability of the executor as established by the court decisions mentioned. Since the same rule, as above mentioned, is applicable to the liability of an administrator, the interpretations placed by the courts upon such statutory provisions reflect upon the interpretation of the rule established by the court decisions concerning the liability of an administrator for claims of his decedent against him.

In the case of *McGaughey, Admr.,* v. *Jacoby,* 54 Ohio St., 487, 44 N. E., 231, in which an interpretation of the statutory provisions mentioned, in the light of the rule established by the courts prior to the enactment of such statutory provisions, is involved, the Supreme

Court held that the indebtedness of an executor to his testator is an asset with which he is chargeable, at its maturity, as so much money in his hands; and the sureties on his bond are liable for his failure to administer and distribute the same according to law and the will, although he was insolvent at the time of his appointment and continued to be so until the settlement of his final account.

In the case of *Yakey, Exr.,* v. *Strunk,* 7 N. P. (N. S.), 177, 18 O. D. (N. P.), 726, which was affirmed by the Circuit Court, June 2, 1908, which decision was affirmed by the Supreme Court in the case of *Yakey, Exr.,* v. *Strunk,* 81 Ohio St., 568, 91 N. E., 1143, and in which an interpretation of such statutory provisions is involved, it was held that an insolvent principal maker of a note, who is named as executor in the will of his surety and accepts such appointment and qualifies as such, and who pays his own notes as they subsequently fall due as claims against the estate, is properly chargeable under the provisions of Section 6069, Revised Statutes, as for so much money in his hands.

The provisions of the Revised Statute section referred to in this decision are practically identical with the provisions of the above quoted Section 10509-67, General Code.

It is generally held that the relation of debtor and creditor exists between the principal and surety from the time the contract of suretyship is made. 50 Corpus Juris, 242, Section 394.

"Upon well settled principles, it is clear that the contract of a principal with his surety to indemnify him for any payment which the latter may make to the creditor in consequence of the liability assumed, takes effect from the time when the surety becomes responsible for the debt of the principal. It is then that the law raises the implied contract or promise of indem-

nity. No new contract is made when the money is paid by the surety, but the payment relates back to the time when the contract was entered into by which the liability to pay was incurred. The payment only fixes the amount of damages for which the principal is liable under his original agreement to indemnify the surety.'' *Rice* v. *Southgate,* 16 Gray (82 Mass.), 142, quoted in the opinion in the case of *Yakey, Exr.,* v. *Strunk,* 7 N. P. (N. S.), 177, 182.

As the implied contract on the part of the surety to indemnify his principal takes effect from the time the relationship of principal and surety is entered into, it is obvious that no demand for payment on the part of the payee is essential to fix the liability of the surety to his principal.

We approve the above authorities as correct statements of law, and accordingly hold that by reason of the relationship of principal and surety existing between the administrator and his decedent in the instant case, irrespective of the solvency or insolvency of the principal and irrespective of whether a demand for payment of the indebtedness had been made, the administrator as the principal occupied the position as debtor to that of his decedent as creditor as to the indebtedness represented by the contracts of suretyship and the implied contract or promise of indemnity on the part of the surety constituted a debt owing by the administrator to his decedent at the time of the appointment of the administrator, the amount of such debt to be fixed by the amount of any payments made on account of the contract of suretyship, out of the proceeds of the estate of the decedent; and consequently that the administrator is chargeable with and must account for, as cash in his hands, the amount of the debt as fixed by the payments made by the administrator out of the proceeds of the estate on such indebtedness.

Such debt does not constitute a debt for which the administrator is only conditionally liable to the estate, for as between the administrator and the estate the administrator at the time of his appointment, by reason of the contract of suretyship, was absolutely liable for the debt, the amount thereof only being subject to future fixing, ascertainment and determination.

The facts in the instant case differ from the facts in the case of *Shields, Admr.,* v. *O'Dell, Admr.,* 27 Ohio St., 398, since in that case the administrator *de bonis non* was sought to be charged with indebtedness of his predecessor executor of the estate by reason of the fact that previous to his appointment as administrator *de bonis non* he had been a surety on the bond of the previous executor, and did not occupy the relationship of principal to that of his decedent as surety, and the amount with which the adminstrator *de bonis* *non* was sought to be charged did not constitute a debt owing to the decedent by the administrator at the time of his appointment.

The facts in this case also differ from the facts in the case of *James* v. *West, Admr., supra,* in that the debts sought to be charged against the administrator in that case were debts owing to the estate by a firm of which the administrator was a member and were not the administrator's individual unconditional debts.

The administrator in the instant case, on March 4, 1936, made a payment of $2,251.13 out of the proceeds of the property mortgaged to secure the debt contracted by himself as principal and the decedent as surety, and this is the only payment made by the estate on account of any indebtedness upon which the decedent was surety or principal. This payment fixes the amount of the debt of the administrator to his decedent's estate at $2,251.13 which amount with interest at the rate of six per cent per annum from March 4,

1936, the date of payment by the estate, is chargeable against the administrator as cash in his hands, for which he must account according to law.

Insofar as the judgment of the Probate Court charges the administrator with the above amount with interest from March 4, 1936, at the rate of six per cent per annum, as cash in his hands, and requires him to account therefor, it is not erroneous, but insofar as the judgment charges him and requires him to account for an amount in excess of the amount mentioned it is erroneous and should be modified so as to charge him as with cash in his hands with the sum of $2,251.13, with interest from March 4, 1936.

We now turn to the second assignment of error which is based upon the admission of evidence.

Assuming, without deciding, that the Probate Court erred in admitting in evidence the paper writing purporting to be journal entry of confirmation and distribution, which had not been journalized, such error was not in any way prejudicial to the appellant, as under the law, in the absence of an order of court to the contrary, the creditor bank had the right to apply the proceeds of the decedent's real estate allocated to its mortgage indebtedness toward the payment of the notes secured by such mortgage in such manner as it saw fit, and the appellant being the principal debtor on one of the notes would not in any event have any right to insist that the proceeds of the real estate of his decedent's surety should be applied in any particular manner to the payment of the notes secured by the mortgage.

Leaving this paper writing entirely out of consideration there is ample evidence in the bill of exceptions showing the consummation of the sale of the real estate, the amount realized therefrom and its application, including the allocation of a certain amount

thereof to the mortgage indebtedness and its application to the payment of the three notes secured by the mortgage.

For the reasons mentioned, the judgment of the Probate Court will be modified so as to charge the administrator with said sum of $2,251.13, with interest thereon from March 4, 1936, at the rate of six per cent per annum, as cash in his hands for which he must account as provided by law, and as modified such judgment will be affirmed at costs of appellant.

*Judgment modified and affirmed.*

KLINGER, P. J., and CROW, J., concur.