In re Estate of Fouts.

(No. 535—Decided April 22, 1957.)

*Mr. James M. Gorman,* for appellant Henry H. Fouts.
*Mr. William E. Bailey,* for appellees Isabel Templeton and Wanda E. Victor.

Wiseman, J.   This is an appeal on questions of law from a judgment of the Probate Court of Clark County.

Grayce Fouts, a resident of Clark County, died intestate on May 23, 1954, leaving Henry H. Fouts, her surviving spouse, and Isabel Templeton and Wanda E. Victor, her daughters, as

her only heirs at law. Henry H. Fouts was appointed administrator of the estate of Grayce Fouts by the Probate Court of Clark County on June 24, 1954. The administrator filed an inventory and appraisement, listing a few items of personal property, the total appraisement of which was $415. Also included in the inventory was the undivided one-fourth interest in a farm of 360 acres, located in Clark County, which was appraised at $13,500. There being no exceptions filed thereto the inventory was approved July 19, 1954.

On August 12, 1954, Henry H. Fouts filed his petition in the Probate Court, in which he elected to purchase the undivided one-fourth interest in the farm at the appraised value. To the petition the Metropolitan Life Insurance Company filed an answer and cross-petition, in which it alleged it held a mortgage lien on the entire interest in the farm, which mortgage was executed by Fouts and his wife on April 15, 1950, for the sum of $22,000, and requested the court to protect its mortgage lien. The two daughters filed an answer in which they admitted that the decedent was the owner of the undivided one-fourth interest and that Fouts was the owner of the undivided three-fourths interest in the farm, which was their residence at the time of the death of the decedent. Further answering the daughters alleged that the appraisal of $13,500 for the undivided one-fourth interest was not the true value of the real estate, and to permit the surviving spouse to purchase said real estate at the appraisal would be prejudicial to them.

On January 5, 1955, the administrator filed a schedule of claims, in which he listed a claim of the Metropolitan Life Insurance Company in the sum of $4,885.88 which represented one-fourth of the amount due on the mortgage indebtedness on the date of the death of the decedent; and a claim of the First Troy National Bank & Trust Company in the sum of $6,084.52, which represented one-half of the amount due on the date of the death of the decedent on the personal promissory note executed by Fouts and the decedent as comakers. To the schedule of claims the daughters filed exceptions, in which they alleged that the claims listed in favor of the Metropolitan Life Insurance Company and the First Troy National Bank & Trust Company were not valid claims against the estate.

On January 3, 1956, the daughters filed a complaint against the administrator for concealment of assets, and on January 5, 1956, filed a motion to remove the administrator. Finding no order with respect to the motion to remove the administrator or the complaint for concealment of assets, we give no consideration to the issues and evidence with respect to these two proceedings.

Two hearings were had by the Probate Court, the last of which took place after the filing of the motion to remove and the complaint. The issues raised by the four separate proceedings were thoroughly tried. The court, upon request of the administrator, rendered separate findings of fact and conclusions of law. In the judgment entry the court sustained the exceptions to the schedule of claims, and disallowed the claim of the Metropolitan Life Insurance Company and the claim of the First Troy National Bank & Trust Company. The court sustained the right of Fouts to purchase the undivided one-fourth interest in the real estate at the appraised value, "providing he pays to the said Isabel Templeton and Wanda E. Victor a sum equal to one-fourth of all money paid by the state of Ohio, for land taken for the right-of-way for United States and state Route 40." From this order this appeal was taken.

We have before us a bill containing all the evidence taken at the two hearings, the thorough and comprehensive opinion of the trial court, and the separate findings of fact and conclusions of law.

The errors assigned are: disallowing the claim of the Metropolitan Life Insurance Company and the claim of the First Troy National Bank & Trust Company; the finding that the administrator was guilty of dereliction of duty is contrary to law and manifestly against the weight of the evidence; and the order requiring the surviving spouse to pay, in addition to the appraised value of the one-fourth interest in said farm, one-fourth of the amount paid for the right-of-way by the state of Ohio, as a condition of his election to purchase, is contrary to law and constitutes an abuse of discretion.

Were the claims of the insurance company and the bank valid claims against the estate? In the findings of fact, which are supported by the record, the trial court found that prior

to the purchase of the farm on April 19, 1950, Fouts and the decedent each owned an undivided one-half interest in a residence property in the city of Troy; that, having agreed to move to the country, Fouts made a proposal to his wife, which was accepted by her, that she deed to him her interest in the residence and she would receive in return a one-fourth interest in the Clark County farm, which was done; that at the time of the purchase of the farm, the price of which was $50,000, Fouts and his wife executed a note, secured by a first mortgage on the farm, for the sum of $22,000 to the Metropolitan Life Insurance Company; that, on the date of death of the decedent, the balance due on the note was $19,350, together with interest; and that the claim allowed by the administrator represented one-fourth of the balance due on the note. In September of 1950 the residence property in Troy was sold, the net sale price being $24,000. The trial court applied $12,000 of the sale price of the Troy property, which represented the one-half interest in the Troy property conveyed by the wife to her husband, against the $12,500 which represented one-fourth of the purchase price of the farm, in which the wife acquired by deed a one-fourth interest, and held that the wife had discharged her obligation with respect to the purchase price of the farm. The court concluded that in view of these facts the insurance company had no valid claim against the estate.

At the time the farm was purchased, Fouts and his wife borrowed $20,000 from the bank on their personal note, which they executed as comakers. The balance of the purchase price of the farm ($8,000) was paid from assets on hand. About one month later, Fouts borrowed from the bank an additional $20,500 on a personal note, which his wife signed as comaker. This money was used to purchase cattle which were placed on the Clark County farm and another farm located in Miami County. Subsequently, Fouts borrowed from the bank an additional $8,000 for the purpose of constructing buildings on the farm. When the Troy residence was sold, the net sale price of $24,000 was applied on the indebtedness due the bank. The bank loans were subsequently incorporated in one note, which was renewed from time to time and eventually became the note in the sum of $12,132.04 executed on May 3, 1954, which was

signed by Fouts and his wife as comakers. The claim listed on the schedule of claims in the amount of $6,084.52 represented one-half of the note with interest. The trial court found that inasmuch as the second bank loan in the amount of $20,500 was used to purchase cattle, the decedent should be considered a one-half owner of the stock on the farm on the date of her death. The court further held that since the administrator had not inventoried any stock as assets of the estate, and throughout the trial insisted that his wife had no interest in the stock, it was just and equitable that the wife's estate should not be subjected to the payment of the balance due on the note. Because of these facts and circumstances, the court disallowed the claim of the bank.

The claims listed in favor of the insurance company and the bank were disallowed as valid claims against the estate because of equities existing between the decedent and her husband, the administrator. Without question, these equities do exist. The decedent and her husband were joint obligors and both primarily liable to the claimants on their several notes. Upon the death of the decedent, her estate became primarily liable for payment of the indebtedness represented by the notes. The claims listed in the schedule were valid claims against the estate. The order disallowing the claims, because of equities existing between the joint obligors, is contrary to the controlling statutory provisions and the Ohio case law on the subject.

Section 2117.31, Revised Code, provides:

"When two or more persons are indebted in a joint contract, or upon a judgment founded on such contract, and either of them dies, his estate shall be liable therefor as if the contract had been joint and several, or as if the judgment had been against himself alone. This section shall not affect the rights of a surety, when certified as such, in a judgment rendered jointly against him and his principal."

The effect of this section is to create a liability in the nature of a joint and several obligation against the estate of a joint obligor. *Cornfeldt* v. *Rihacek*, 39 Ohio App., 292, 177 N. E., 522; *Yoder* v. *Medbury-Ward Co.*, 10 Ohio Law Abs., 493; *Griffeth* v. *Bender*, 19 Ohio Law Abs., 135; *In re Estate of Fiebig*, 61 Ohio App., 40, 22 N. E. (2d), 288. However, if the es-

tate of the decedent pays the claims, such payment by the estate does not release the other joint obligor of the liability to pay his part of the obligation. Under the evidence, Fouts, as between himself and the decedent's estate, owes the entire claim to the Metropolitan Life Insurance Company and, also, owes the entire claim on the note to the First Troy National Bank & Trust Company. Where joint promissory notes are executed by the decedent and a person who becomes the administrator for the decedent's estate, and are paid by the estate, the administrator's account must be surcharged for his share of the indebtedness. *In re Lones,* 57 W. L. B., 122. In the opinion of *In re Estate of Fiebig, supra,* on page 41, the court said:

"From this agreed statement of facts and under the law applicable, each and all the signers of the mortgage obligation are primarily liable for the debt, and, therefore, it constituted a primary debt of the estate. If the estate satisfied the debt, it would be entitled to contribution from the other joint debtors, which contribution would be an asset of the estate, and could be collected as such.

"Since the estate is primarily liable for the debt, we see no error in listing it in the schedule of debts filed."

In the instant case, the equities weigh heavily in favor of the estate, both with respect to the claim of the insurance company and the claim of the bank. With respect to the claim of the insurance company, the evidence clearly shows that decedent was to receive one-fourth interest in the farm for the one-half interest in the Troy residence. Her interest in the Troy residence was unencumbered, and she is entitled to take one-fourth interest in the farm without any encumbrance. Consequently, the decedent's estate should not be required to pay any portion of the claim of the insurance company. With respect to the claim of the bank, Fouts testified that his wife signed the note because the bank required her signature, and she had no interest in the cattle purchased with the money loaned by the bank. The decedent in her relation to her co-maker became a surety or an accommodation maker as provided in Section 1301.31, Revised Code. See 29 Ohio Jurisprudence, 1056, Section 301. The decedent's estate is entitled to assert all rights and privileges granted to a surety, in law or in equity,

against the principal. As between the claimants and the decedent, the estate of the decedent is liable for payment, but as between the decedent's estate and Fouts, the comaker and principal obligor on the notes, Fouts was the debtor, and when and if the estate discharges the debts it will be entitled to reimbursement from Fouts. See 22 Ohio Jurisprudence (2d), 490 *et seq.*, Section 139; *Barger* v. *Gething,* 39 Ohio Law Abs., 221, 52 N. E. (2d), 94; *In re Estate of Deal,* 70 Ohio App., 503, 46 N. E. (2d), 643 (motion to certify overruled by the Supreme Court, October 14, 1942); *Yakey* v. *Strunk,* 7 N. P. (N. S.), 177, 18 O. D. (N. P.), 726, affirmed by the Circuit Court, which was affirmed by the Supreme Court in 81 Ohio St., 568. All equitable remedies, including the right of subrogation, are preserved in favor of the estate. 38 Ohio Jurisprudence, 590 *et seq.,* Section 219. A simple remedy is afforded the estate whereby the administrator will be surcharged in his accounting for any amount which the estate is required to pay on such claims. 22 Ohio Jurisprudence (2d), 738 *et seq.,* Section 367. See *Lambright, Admr.,* v. *Lambright,* 74 Ohio St., 198, 206, 78 N. E., 265. We find assignments of error numbered 1 and 2 to be well made.

We now consider assignments of error numbered 3 and 4. In electing to take the real estate at the appraised value, should the surviving spouse be required to pay, in addition to the appraised value, a sum equal to one-fourth the amount paid by the state of Ohio for land taken for highway purposes? The order of the court requires Fouts to pay "one-fourth of all money paid by the state of Ohio, *for land taken* for the right-of-way." The state has deposited $6,923.50 for the land taken, although there is a statement in appellant's brief to the effect that the lower court intended the order to require Fouts to pay one-fourth of the total deposit, which amounted to $32,107.50. However, this discrepancy becomes unimportant because of our ruling on the principal question presented.

Section 2113.38, Revised Code, provides for the election of the surviving spouse to purchase the mansion house at the appraised value. This section in part provides:

"On the hearing of the application or petition, the finding of the court shall be in favor of such surviving spouse unless it appears that the appraisement was made as a result of collu-

sion or fraud or that it is so manifestly inadequate that a sale at such price would unconscionably prejudice the rights of the parties in interest or creditors.''

This statutory provision circumscribes the power of the Probate Court. *Passoni* v. *Breehl,* 41 Ohio Law Abs., 315, 14 Ohio Supp. (57 N. E. [2d]), 100. The finding of the Probate Court shall be in favor of the surviving spouse unless the court finds (1) the appraisement was made as a result of collusion or fraud, or (2) the appraisement is so manifestly inadequate that a sale at such price would unconscionably prejudice the rights of the parties in interest or creditors. On these two issues evidence was taken. Two real estate brokers testified that the farm had a value in excess of $54,000 but their appraisement was not made as of the date of death, but as of the date of the hearing, which took place in March 1955, one year after the death of the decedent. The evidence shows further that these two witnesses did not know and therefore did not take into consideration that a substantial part of the farm would be flooded during high water. This fact was considered by the three estate appraisers who thought the flood potential to be detrimental. The three estate appraisers consisted of the official court appraiser, a tenant farmer on an adjoining farm who had resided in that area for many years and who had worked on the farm in question, and another farmer who had resided in the neighborhood and been acquainted with the Fouts farm for many years.

There was no evidence indicating that there had been any attempt to influence the estate appraisers.

The trial court found that Fouts did not disclose to the estate appraisers the possibility of a part of the farm being taken for highway purposes. The court attached particular significance to this matter in arriving at its conclusion that the appraised value was inadequate and in finding that the administrator was guilty of a dereliction of duty. The findings of fact in respect thereto are as follows:

"* * * the court admitted the testimony of two of the original estate appraisers that their attention was not called by the administrator to the action contemplated by the Highway

Department of Ohio, to appropriate a perpetual easement through said farm; * * * and particularly his failure to direct the attention of the appraisers of the estate to the possibility of the state of Ohio taking part of the Fouts farm for the relocation of Route 40 through said farm and further his action in allowing the two claims of $6,084.52 and $4,885.88 against the decedent's estate constituted such dereliction of his duties as administrator as warranted the court in refusing permission to surviving spouse to purchase the estate for $13,500, unless and until he paid to the two daughters one-fourth of whatever money is paid by the state of Ohio for the land taken for said right-of-way.''

It is evident that the trial court rested its order on the findings of fact relative to the failure of Fouts to call to the attention of the appraisers the contemplated improvement of U. S. Route 40. On the date of death no one knew where the right-of-way would be located, how much land would be taken, the value thereof, what damage there would be to the residue, and whether the improvement would be generally beneficial or detrimental to the farm. The trial court held that Fouts would profit to the extent of $32,107.50 by the highway improvement, and that he should share a portion of the deposit with the heirs. Whether the amount of money deposited by the State Highway Department will make Fouts whole has not been determined. In theory, at least, it is intended to make him whole, and not intended as a profit. Eventually, Fouts may recover more or less than the amount of the deposit. This matter is the subject of pending litigation.

The evidence shows that a week or two prior to the decedent's death, the members of the family had received some information that the farm might be affected by the relocation of U. S. Route 40. However, the testimony given by Bowen, engineer for the State Highway Department, conclusively shows that there had been no field work prior to the decedent's death; that the first field work was done in September 1954, four months after decedent's death; that the first contact with Fouts respecting land to be taken was in October 1955; and that between October 1955 and January 12, 1956, the date on which

appropriation proceedings were filed, Bowen informed Fouts as to the exact amount of land to be taken and the amount the state proposed to pay as compensation.

The appraisement is made as of the date of death. In electing to purchase at the appraised value, under Section 2113.38, Revised Code, the surviving spouse takes the property as evaluated as of the date of death. Anything transpiring after the date of death affecting the value of the property may not be considered. In *Overturf, Admr.,* v. *Wear,* 26 Ohio St., 538, where the court had a similar question presented, the court held:

"The right of the widow, under section 71 of the act for the settlement of estates, to take personal property at the appraisement, is not limited to the time of making the appraisement, but may be exercised at any time before the property is put up for sale, within the three months allowed to the administrator for selling the property; *and her right is not affected by the changes that may, in the mean time, have taken place in the market value of the property.*" (Emphasis ours.)

On page 540, the court said:

"Under these provisions the widow electing to take property at the appraisement stands on the footing of a preferred purchaser.

"The preference consists in her having the privilege of purchasing at the price fixed by the appraisement, instead of being required to buy at the price determined by competition at the sale. In other respects, she is required to conform to the conditions prescribed for other purchasers."

See 22 Ohio Jurisprudence (2d), 562, Section 209.

Furthermore, the inventory being approved by the Probate Court, the appraisement of the real estate as set forth therein became "conclusive for all purposes except inheritance tax, unless a reappraisal is ordered by the court." Section 2115.17, Revised Code.

The trial court, as a matter of law, improperly admitted and considered evidence relating to the taking of part of the farm for highway purposes. When this evidence is eliminated there is left no evidence which would justify a finding that the appraised value is so inadequate that a sale at such price would

unconscionably prejudice the rights of the parties in interest, or that the appraisement was made as a result of fraud or collusion. This finding is contrary to law.

Under Section 2113.38, Revised Code, the Probate Court "shall make the entry fixing the terms of payment" for such property, but this provision does not authorize the court to require the surviving spouse to pay more than the appraised value for said property.

The trial court found that the administrator was guilty of dereliction of duty in failing to include the livestock in the inventory and in failing to inform the estate appraisers of the contemplated highway improvement. Because of our ruling on these issues, no dereliction of duty has been shown. This finding was contrary to law and manifestly against the weight of the evidence.

Coming now to render the judgment which the lower court should have rendered, as provided in Section 2505.37, Revised Code, this court renders judgment overruling the exceptions to the schedule of claims, and orders the administrator to be surcharged, if and when the estate pays the claims of the insurance company and the bank, and renders judgment in favor of the surviving spouse on his petition to elect to take the real estate at the appraised value. Costs are taxed against the appellees.

*Judgment reversed and cause remanded.*

HORNBECK, P. J., and CRAWFORD, J., concur.