28

WOBSER, APPELLANT, *v.* TANNER ET AL., APPELLEES.

(No. 78-1514—Decided November 14, 1979.)

*Messrs. White & White* and *Ms. Beverly B. White,* for appellant.

*Catri, Howells, Kellam & Owens Co., L.P.A., Mr. William W. Owens, Mr. James R. Kellam, Miller & Fegen Co., L.P.A.,* and *Mr. Reese A. Wineman,* for appellees.

WILLIAM B. BROWN, J. We must decide whether the surviving spouse is entitled to purchase a one-half interest in the mansion house at the appraised price of $5,000 and whether she is entitled to purchase a one-half interest in the adjoining 51.82 acres. We deal first with the latter question.

At the time of Roy Tanner's death, R. C. 2113.38 (A) stated that "A surviving spouse***may purchase***[t]he mansion house, including the parcel of land on which such house is situated and *lots* or *farm land adjacent thereto and*

*used in conjunction therewith as the home of the decedent\*\*\*.*"[1] (Emphasis added.) The appellant admitted that the 51.82 acres had not been used as farm land for some six or seven years prior to the death of the decedent. The question then becomes whether the land constitutes lots used in conjunction with the mansion house as the home of the decedent. The Probate Court noted that the appellant offered no proof on this matter. We find that she failed to meet her burden of going forward with the evidence. We concur with the Probate Court and Court of Appeals and find that the appellant is not entitled to purchase a one-half interest in the adjacent 51.82 acres.[2] This land will pass to the devisees pursuant to the decedent's will.

In determining whether the surviving spouse should be entitled to purchase the mansion house and the two acres upon which it is situated, we find R. C. 2113.38 to be controlling. It states in pertinent part:

"On the hearing of the application or petition, the finding of the court shall be in favor of the surviving spouse, unless it appears that the appraisement was made as a result of collusion or fraud, or that it is so manifestly inadequate *that a sale at that price would unconscionably prejudice the rights of the parties in interest* or creditors. The action of the court shall not be held to prejudice the rights of lien holders." (Emphasis added.)

We agree with the Probate Court and the Court of Appeals and find that a sale at the appraisal price ($5,000)would be unconscionable.

Appellant states that she is entitled to purchase at the appraised value as of the date of death. There is no dispute here. The problem arises when the appellant claims that she should not have to account for any increase in value which occurred after the date of death. She cites *Overturf* v. *Wear* (1875), 26 Ohio St. 538; and *In re Estate of Fouts* (1957), 103 Ohio App.

---

[1] See current R. C. 2113.38 (A). The current statute merely clarifies the language and does not alter the substance.

[2] We make no determination as to what constitutes a lot "used in conjunction with it [the house] as the home of the decedent." (Current language of R. C. 2113.38(A).)

313, which are distinguishable. In both of these cases, the change in value of the property was due to outside market factors and not attributable to direct monetary contributions made by those who stood to share in the real estate if it were not for the surviving spouse's eliction to purchase.

The undisputed testimony is that each daughter contributed $7,700 to a fund from which improvements were made to the property. It would be a gross injustice to allow the appellant to purchase the decedent's one-half interest in the house at the appraised value of $5,000. This amount would then be divided into thirds among the two daughters and their mother. Clearly, the sale to the appellant at the appraised price and the resulting payment to the appellees in satisfaction of their claims as devisees of Roy Tanner "would unconscionably prejudice the rights of the parties in interest." R. C. 2113.38. Such a sale fails to account for the contributions to the value of the property made by the daughters. It is exactly this type of situation which R. C. 2113.38 meant to prevent. In the rare situation where devisees contribute substantially to the value of the mansion house after its appraisal, then the doctrine of unconscionability, with its equitable roots, should be invoked. Only when outside factors cause the value of the house to increase after the appraisal, should the surviving spouse be able to purchase at the appraisement price as of the time of the decedent's death. Otherwise, the surviving spouse would benefit at the expense of the other devisees under the will. This would be unjust and unconscionable. The mansion house and the acreage on which it is situated will pass according to the decedent's will.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., SWEENEY, LOCHER and HOLMES, J. J., concur.

HERBERT and P. BROWN, JJ., dissent in part.

PAUL W. BROWN, J., dissenting in part.

The majority opinion clouds several probate statutes in order to reach what is deemed to be an "equitable result." R. C. 2113.38, which in this instance should be read to permit the surviving spouse to purchase her home, less the adjacent 51.82 acres, is misread. R. C. 2113.38 provides, in its seventh full paragraph, that "the finding of the court [permitting the election to purchase] shall be in favor of the surviving spouse, unless it appears that the appraisement was made as a result of collusion or fraud, or that *it* is so manifestly inadequate that a sale at that price would unconscionably prejudice the rights of parties in interest or creditors." (Bracketed material added.)

The majority reads this provision to bar a spouse's purchase when a "sale" is found to be manifestly inadequate. A close examination of the statute clearly indicates that the word "it," emphasized in the above quote, refers to the appraisement not the sale. The appraisement is that which must be found manifestly inadequate. In this cause the sale may indeed have been unconscionably prejudicial to the parties, but not because the appraisement was manifestly inadequate[3] or because of collusion or fraud. The right to election is granted by the General Assembly and should not be abrogated except in those circumstances explicitly set forth by that body; to do otherwise only disrupts the certainty of this procedure.

Other statutory provisions are also undermined. R. C. 2115.02 requires the appraisal value to be based upon the value at the time of decedent's death, yet because of today's holding, appreciation over several years will inure to the benefit of the daughters. Similarly affected is R. C. 2115.17, which states that the appraisement is conclusive once it is approved. A purchase at the appraised value should be allowed except where collusion, fraud, or some other circumstances of a similar nature make *the appraisement* manifestly inadequate.

Equally disturbing in this cause, is the extension of the Probate Court's equity powers. The Probate Court has plenary power under R. C. 2101.24, but only as to matters

---

[3] The appellees have not challenged the appraisal. In this instance objections to the inventory and appraisal were withdrawn.

34

properly before it. Its equitable jurisdiction should only be invoked in matters that are incidental to the express powers conferred upon such courts. *Bolles* v. *Toledo Trust* (1940), 136 Ohio St. 517, 521. An expansion of power that permits the Probate Court to completely bar surviving spouses from purchasing their homes, whenever it deems such a sale inequitable, is unwarranted and unsupported by precedent.

These problems could be easily avoided, if the surviving spouse were permitted to purchase the property at the appraised value. The statutory scheme would be left intact and the appellees would have an adequate remedy at law in a contract action to recover the money due to them. A full hearing before a common pleas court would be more appropriate on this aspect of the cause.

HERBERT, J., concurs in the foregoing dissenting opinion.

