NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2726

_____

UNITED STATES OF AMERICA

v.

CURTIS DELAY BROWN,

Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-12-cr-00224-001)
District Judge: Honorable Terrence F. McVerry

_____

Submitted Under Third Circuit LAR 34.1(a)
June 16, 2016

Before: AMBRO, NYGAARD, and VAN ANTWERPEN♦, Circuit Judges

(Opinion filed: July 26, 2016)

_____

♦ The Honorable Franklin S. Van Antwerpen participated in the decision in this case. Judge Van Antwerpen passed away on July 25, 2016 prior to the filing of the opinion. This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

————————

OPINION[*]

————————

AMBRO, Circuit Judge

Curtis Brown was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and received a mandatory minimum sentence under 18 U.S.C. § 924(e) for being an armed career criminal. Brown appeals his conviction on the ground that the District Court improperly admitted a prejudicial statement into evidence. He also argues that the jury instructions from his trial were unconstitutional. We disagree on both counts and therefore affirm.[1]

**I.**

On July 7, 2012, Pittsburgh police officers entered an after-hours nightclub, where they allegedly saw Brown pull a firearm out of his waistband and hide it between two couch cushions. ATF Agent Louis Weiers said that Brown made the following statement after being taken into custody:

> Brown stated that he carries a firearm for self[-]protection due to the area in which he lives and the nature of the business he is in. He added that he may not always have the firearm on him, but it is near, if needed. Brown stated that there is no guarantee he would [] stop carrying a gun after this arrest. Brown added that he didn't want to go around and shoot someone, but [the gun] was just for protection.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction per 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

App. 2. Brown filed a motion to exclude the statement as irrelevant and unfairly prejudicial. The District Court granted the motion with respect to the portion of Brown's statement where he maintained that "there is no guarantee he would [] stop carrying a gun after this arrest," finding that the risk of unfairly prejudicing the jury substantially outweighed the segment's limited probative value. App. 6. But it distinguished that section from the rest of Brown's statement and ruled that the remainder could be admitted.

Meanwhile, Brown faulted the Government during trial for failing to present fingerprint or DNA evidence tying him to the gun. Instead, the Government relied primarily on eyewitness testimony. Over Brown's objection, the District Court instructed the jury that, though it could "consider [the lack of testing] in deciding whether the Government has met its burden," there is "no legal requirement that the Government must use any or all of these specific investigative techniques or all possible techniques to prove its case." App. 319. It added that "[y]our concern . . . is to determine whether or not the eyewitness testimony which has been admitted as evidence in this trial proves the Defendant's guilt beyond a reasonable doubt." *Id.*

**II.**

The District Court admitted Brown's statement to Weiers on the ground that it was a concession that he possessed the gun at the time of his alleged offense. Brown, by contrast, argues that the statement reflected not that he had the gun on that particular date, but rather that he carried it at other times. He therefore says that the Government improperly used the statement as propensity evidence—*i.e.*, to argue that his possession

3

of a gun at other times made it more likely that he had it with him on the date of his purported violation. Such a use, he says, would be prohibited by Fed. R. Evid. 404(b), which states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

The District Court's interpretation of the statement—in particular, its view that it was an admission of possession at the time of arrest—is a question of fact that we review for clear error. *In re Grand Jury*, 705 F.3d 133, 155 (3d Cir. 2012). We then exercise plenary review over its conclusion, based on the factual determination, that 404(b) does not bar the statement's admission. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010).

We begin with the factual determination. The Court reasoned that "[w]hen each line of the statement is considered separately and read closely, . . . [it] is more appropriately construed as an admission that aids in directly proving the crime charged in the indictment." App. 3–4. Specifically, the Court viewed the statement as an admission made "under the mistaken belief that [Brown's] reason for carrying the firearm [*i.e.,* self-protection] might eliminate or minimize his culpability for the charged offense." App. 4.

We must uphold a factual finding under clear error review as long as it is "plausible in light of the record viewed in its entirety." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). The District Court's determination here readily passes this test. We note in particular that Brown never denied possessing the firearm in the nightclub and made his statement to Weiers in the context of a post-arrest interview. This suggests he

4

was talking about possession at the time of his July 7th offense and not at some other time. Of course, a jury might ultimately interpret the statement differently, but the Court's understanding, in its capacity as a gatekeeper of what gets to the jury, was at least plausible.

Having thus interpreted the statement, the Court properly concluded that it was outside the scope of Rule 404(b). That rule has no application to evidence that "directly proves the charged offense." *Green*, 617 F.3d at 248 (internal quotation marks omitted). The Court permissibly determined that Brown's statement does just that. As such, we reject Brown's contention that Rule 404(b) bars its admission.[2]

## III.

Brown next raises Fifth and Sixth Amendment challenges to the jury instruction that the Government did not need to use any particular investigative technique. Claiming that this denied him due process and intruded on the jury's province, Brown challenges both the legal standard used in the instruction and its wording. "We generally exercise plenary review over whether the jury instructions stated the proper legal standard, and review . . . the wording of instructions for abuse of discretion." *United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (internal quotation omitted).

---

[2] Brown still could have avoided admission of the statement if its potential for unfair prejudice substantially outweighed its probative value. *See* Fed. R. Evid. 403. The District Court concluded that this was not the case, and we review this only for abuse of discretion. *United States v. Driggs*, 823 F.2d 52, 54 (3d Cir. 1987). We agree with the Court's resolution of this issue. *See United States v. Cross*, 308 F.3d 308, 324 n.23 (3d Cir. 2002) (noting that unfair prejudice requires more than the evidence being "merely undesirable from the defendant's perspective").

Turning first to the legal standard from the instruction, which addresses the potential expectations among jurors that police always use advanced forensic techniques shown on television crime-scene dramas, Brown contends that it impermissibly reduced the Government's burden of proof by undermining his attack on the investigation. As a result, he urges us to follow a line of cases in Maryland limiting the use of a so-called "anti-CSI effect" instruction. *See United States v. Robinson*, 83 A.3d 69 (Md. 2014); *Atkins v. State*, 26 A.3d 979 (Md. 2011). We decline this invitation.

At the outset, we note that the District Court based its instruction on Third Circuit Model Criminal Jury Instruction 4.14. "We have a hard time concluding that the use of our own model jury instruction can constitute error . . . ." *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010). Moreover, Brown's suggestion that the instruction reduced the burden of proof is unconvincing, as the Court properly informed the jury that the Government bore the burden to prove its case beyond a reasonable doubt. *See* App. 309–311, 317, 319, 322, 324–30. We note that our sister courts have uniformly upheld the use of jury instructions on investigative techniques similar to the one at issue here. *See United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004); *United States v. Saldarriaga*, 204 F.3d 50, 52–53 (2d Cir. 2000); *United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992). And we have no trouble joining them.

Brown also argues that, even if the model instruction is proper, the District Court still abused its discretion in its choice of wording. We find abuse of discretion only where "the district court's action was arbitrary, fanciful or clearly unreasonable." *United States v. Frazier*, 469 F.3d 85, 87–88 (3d Cir. 2006). In particular, Brown objects to the

6

sentence that directs the jury to determine guilt based on "the eyewitness testimony which has been admitted as evidence in this trial." App. 319. Read in isolation, that sentence might support Brown's theory that the instruction impermissibly shifted the Government's burden of proof by directing the jury to focus on the eyewitness testimony as opposed to the lack of evidence. *See United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991) ("Indeed, it is the absence of evidence . . . that may provide the reasonable doubt that moves a jury to acquit.").

But we consider jury instructions as a whole. *Flores*, 454 F.3d at 157. Brown concedes that in the challenged instruction the District Court "initially and properly instructed [the jury] that a reasonable doubt 'may arise from the evidence or from the lack of evidence or from the nature of the evidence.'" Brown Br. at 60 (quoting App. 311). In fact, the District Court repeatedly reminded the jury that the Government bears the burden of proof beyond a reasonable doubt. As a result, we find no abuse of discretion.

\* \* \* \* \*

As we disagree with both of Brown's reasons to overturn his conviction, we affirm.